Smith et al., Appellant, *v.* Pachter.

Donovan et al., Appellants, *v.* Pachter.

Argued January 30, 1941.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Stanley F. Coar*, with him *F. J. McDonnell, J. Julius Levy* and *David J. Reedy,* for appellants.

*Walter W. Harris,* of *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY MR. JUSTICE PARKER, March 25, 1941:

These actions in trespass by minors and their parents will be disposed of in one opinion as they involve the same facts and were tried by one jury.   The causes arose as the result of a collision at a street intersection be-

tween an automobile owned and driven by the defendant and a sled on which the minors were coasting. At the conclusion of the trial, binding instructions were given for the defendant, judgments were entered on the verdicts, and the plaintiffs have appealed. We are of the opinion that the deductions to be drawn from the evidence are not so clear that the trial court was justified in taking the questions of defendant's negligence or plaintiffs' contributory negligence from the jury and disposing of them as a matter of law.

In determining whether the court was justified in giving binding instructions for the defendant, not only should the testimony be read in a light most favorable to plaintiffs, all conflicts therein being resolved in their favor, but plaintiffs must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence: *Guilinger v. Penna. R. R. Co.,* 304 Pa. 140, 144, 155 A. 293. We will endeavor to detail the pertinent evidence from that standpoint.

The accident occurred at the intersection of Pittston Avenue and Palm Street in the city of Scranton. Pittston Avenue, described as running north and south, is paved, is forty feet in width between curbs, and has on it northbound and southbound trolley tracks. It is intersected at right angles by Palm Street, a dirt street forty feet in width between curbs. The neighborhood, at the time of the accident, was generally residential in character. Three of the corners were occupied by residences and the fourth by a small store, and there were within a block a motion picture theatre, a barber shop, and a wholesale establishment. It is admitted that the intersection was well lighted. Palm Street, from Prospect Avenue, the next highway east of Pittston Avenue, descends toward the latter street at a grade of from seven to ten per cent, while Pittston Avenue has a grade of only one per cent.

', A heavy snow had fallen in Scranton on Thanksgiving Day, 1938, making ideal coasting conditions for children, of which they took advantage for a number of days. On November 29, 1938, on a clear and cold winter night, Calista Smith, then sixteen years and three months of age, and Anne Donovan, then fourteen years and eleven months of age, borrowed a sled and, starting at the intersection of Prospect Avenue and Palm Street, coasted west on Palm Street until they collided with defendant's car being driven north on Pittston Avenue. The Smith girl was lying prone on the sled while the Donovan girl was kneeling between the legs of the former and holding a bar on the side of the sled. They met with severe injuries, those to the Smith girl being such as to probably render her helpless for the rest of her life.

Employees of the city of Scranton, knowing that a large number of children were coasting on the Palm Street hill, had caused a band of ashes to be spread across Palm Street beginning twenty-two feet east of the east curb line of Pittston Avenue and extending further east twenty feet, for the purpose of stopping the sleds before they would come into Pittston Avenue. Thirty or more children were coasting on Palm Street on the evening of the accident, as they had been for several days before, and invariably the sleds were stopped by the ashes until these two girls descended the hill. The ashes failed to stop the momentum of their sled and they passed into Pittston Avenue with the distressing results mentioned. The negligence alleged and relied upon by the plaintiffs was that the defendant drove his car at an excessive rate of speed and did not have it under proper control at a street intersection where he knew, or ought to have known, that children were gathered in considerable numbers and were engaged in coasting. There are other important facts to which we will refer later.

We cannot say as a matter of law that there was not sufficient evidence to support a finding of a jury that

the defendant was negligent. There was testimony that defendant was driving at a rate of thirty-five to forty miles per hour and did not slacken his speed until he entered the intersection and that he did not blow his horn. The uncontroverted evidence coming from both sides as to where the defendant stopped his car compels the conclusion that the defendant was not moving as rapidly as plaintiffs' witnesses testified but still leaves room for a finding that he did not enter the intersection with his car under such control as the circumstances required. A motor vehicle driver in approaching an intersection must carefully look for traffic on the cross street and approach with his car under complete control so that he can stop on the shortest possible notice: *Morris v. Kauffman*, 120 Pa. Superior Ct. 515, 182 A. 758; *Mosely v. Connor*, 318 Pa. 17, 19, 177 A. 817; *Rhoads v. Herbert*, 298 Pa. 522, 148 A. 693. While we recognize the fact that coasting may give rise to different duties and responsibilities, we have established principles to guide us in the immediate matter under consideration.

Where there is not any testimony to support a finding that a driver knew, or had reasonable ground for knowing, that children were sledding or likely to be sledding on a hill at the time of passing, and a sled not under control came rapidly without warning or opportunity to apprehend its approach and a collision took place, there is no liability for damages to children who may be injured: *Eastburn v. U. S. Express Co.*, 225 Pa. 33, 73 A. 977; *Post v. Richardson*, 273 Pa. 56, 116 A. 531; *Wetherill v. Showell, Fryer & Co.*, 264 Pa. 449, 107 A. 808; *Leslie v. Catanzaro*, 272 Pa. 419, 116 A. 504; *Stickler v. Catanzaro*, 86 Pa. Superior Ct. 63; *Kovalchik v. Demo*, 94 Pa. Superior Ct. 167; *Siglin v. Haiges*, 95 Pa. Superior Ct. 588. On the other hand, where a driver can see children on a cross street or knows or ought to know that children are riding on a hill, he is required to give warning of his approach and

take other reasonable means to guard against accident consistent with the circumstances: *Yeager v. Gately & Fitzgerald, Inc.*, 262 Pa. 466, 106 A. 76; *Idell v. Day*, 273 Pa. 34, 116 A. 506; *Rossheim v. Bornot, Inc.*, 310 Pa. 154, 165 A. 27; *Fisher v. Duquesne Brewing Co.*, 123 Pa. Superior Ct. 208, 187 A. 90; *Morris v. Kauffman*, supra; *Meyers v. Central R. R. of N. J.*, 218 Pa. 305, 306, 67 A. 620.

The defendant was a peddler whose business took him into and through this district frequently. He had a customer in that locality and was familiar with it, particularly with its topography. He passed the intersection every weekday at least twice and knew that the streets coming into Pittston Avenue, particularly Palm Street, descended at a stiff grade to the avenue, thus affording an ideal street, from the standpoint of children, for coasting. The children had been using the street to a considerable extent for five days. A police officer testified that from a point on Pittston Avenue thirty feet south of the southerly curb line of Palm Street he could see the surface of Palm Street to the east for eighty or ninety feet, while an assistant city engineer who had made measurements testified that from a point in the easterly cartway of Pittston Avenue and sixty feet south of the curb line of Palm Street, a person riding in an ordinary car could see the surface of Palm Street for seventy-eight feet to the east. The view of Palm Street was extended as one advanced north on Pittston Avenue. There were at the time at least thirty children coasting on the hill and five or six sleds passed down just before that of the minor plaintiffs, one going immediately in front. There were at least eight children standing with their sleds at the foot of the hill, as expressed by one witness, or at the corner, as expressed by another. Considering the knowledge which the defendant had of the use of the street and his familiarity with the surroundings, it is our

opinion that the court was not justified in saying as a matter of law that the defendant neither knew nor ought to have known that children were coasting upon this street. When he approached the street, if he had his car under the required control and looked, a jury might have found that he would have seen the descending sled in time to avoid the accident.

The question of the contributory negligence of the minors does not seem to have been stressed by the defendant in the court below and was not given serious consideration by that court. "Coasting on a public street which is not put to extended public use, and not expressly prohibited by ordinance, is not necessarily a nuisance, nor is it an unlawful act or negligence per se. . . . Where, under the undisputed facts, coasting upon a street is clearly and manifestly dangerous, it may be the duty of the court to so declare as a matter of law, but, where the evidence is conflicting, and the inferences to be drawn are not clear, the question whether plaintiff has exercised care and diligence to avoid danger while coasting, such as to be expected of a reasonably careful and prudent man under like circumstances, is for the jury": *Idell v. Day,* supra, p. 37. Also, see *Meyers v. Central R. R. of N. J.,* supra; *Morris v. Kauffman,* supra; *Fisher v. Duquesne Brewing Co.,* supra. In view of the facts that this was the only sled known to have gone through the ashes and that this was a residential district, we cannot say that coasting on this street was so clearly and manifestly dangerous as to make it the duty of the court to declare it negligence as a matter of law. We cannot say that the conduct of the plaintiffs did not conform to that of a reasonable person of like age under like circumstances. Coasting on this street not having been expressly prohibited by ordinance, not being negligence per se, and not being clearly and manifestly dangerous, it was for the jury and not for the court to determine whether the

28

conduct of the minor plaintiffs was such as was to be expected of a reasonably careful and prudent person under like circumstances.

We are not unmindful of the contradictory evidence furnished by defendant and it has a strong appeal, but it was for the jury to sift this evidence. At best the cases are close and it is only in clear cases that the court is justified in taking a question of contributory negligence from the jury and disposing of it as a matter of law: *Shaffer v. P. R. R. Co.*, 258 Pa. 288, 292, 101 A. 982; *Jackson v. Curry*, 117 Pa. Superior Ct. 63, 67, 177 A. 346. There is much in defendant's evidence and arguments, to which we have not referred, that requires careful consideration by a jury. As an aid to the jury, when the cases are tried again, the parties are entitled to specific instructions as to the duties of plaintiffs and defendant as applied to the facts developed.

The judgment in each case is reversed and new trials are awarded.

DISSENTING OPINION BY MR. JUSTICE DREW:

I am constrained to dissent from the opinion of the majority in these appeals, for I have searched the record in its entirety in vain for the slightest evidence of negligence on the part of defendant. A careful scrutiny of the testimony adduced reveals that the sole cause of this unfortunate accident was the negligence of these two young ladies, who at the time they sustained their injuries were of the ages, of sixteen years and three months, and fourteen years and eleven months, respectively. Both of them had sufficient capacity and understanding to be sensible to danger, and yet heedlessly they permitted the sled upon which they were riding to enter upon a heavily traversed thoroughfare, after dark, being totally oblivious of oncoming vehicular traffic.

It seems clear to me that the learned court below properly concluded that the instant cases are ruled by

*Eastburn v. United States Exp. Co.*, 225 Pa. 33. In that case, where the facts were quite analogous to those of the present cases, we affirmed the judgment entered for defendant n. o. v. on the well-considered opinion of the court below, wherein it was said (p. 38) : "There is not any testimony to justify a finding that the driver had knowledge that the boys were sledding on the hill or that they were likely to be sledding on the hill, at the time he was passing the foot of the hill. It cannot be doubted that for boys to come down a hill such as decribed in the testimony in this case, on a . . . sled . . . at the accompanying rate of speed which would necessarily follow such a descent; and to run into a city street at the foot of the hill, would be a wrongful act." Recovery under such circumstances against the owner or operator of the vehicle has been consistently denied as a matter of law: *Wetherill v. Showell, F. & Co.*, 264 Pa. 449; *Leslie v. Catanzaro*, 272 Pa. 419; *Post v. Richardson*, 273 Pa. 56; *Hoff v. Ward Baking Co.*, 70 Pa. Superior Ct. 235; *Stickler v. Catanzaro*, 86 Pa. Superior Ct. 63; *Kovalchik v. Demo*, 94 Pa. Superior Ct. 167; *Siglin v. Haiges*, 95 Pa. Superior Ct. 588.

Giving the plaintiffs the benefit of every fact and inference of fact properly deducible therefrom, as we must, yet there is no evidence whatever upon which a jury could justifiably have concluded that defendant was negligent. The accident occurred at 7:30 in the evening, after nightfall. As defendant approached the intersection where the accident took place, his view up Palm Street to the east was partially obstructed by a residence on the southeast corner, erected on a terrace twenty-eight inches above the level of the sidewalk. Two large maple trees, standing in the yard of the house, on the Palm Street side, further impaired defendant's vision of the coasters. The neighborhood was residential in character, but Pittston Avenue was a heavily-travelled street, and to prevent those sledding on Palm Street from endangering themselves and others by dart-

ing into the intersection, the police had placed a wide belt of ashes on the hillside to halt the sleds forty feet from the crossing.

Although there was no direct evidence as to the course of the sled upon which the minor plaintiffs descended the hill, they were struck at a point five feet north of the southerly curb-line of Palm Street. It is, therefore, apparent that just before they reached the intersection, these young ladies were upon the side of the hill nearest to the approaching vehicle of defendant, and close behind the twenty-eight inch terrace of the house on the corner. In view of the position of the minor plaintiffs upon the sled, one lying prone and the other kneeling and bending over to grasp the side bars, and in view of the further fact, as admitted in argument before the court below, that the south curb of Palm Street was an additional ten inches in height, they could not have been visible to a motorist approaching from the south on Pittston Avenue, even were his view not completely obstructed by the corner dwelling and trees. There is absolutely no evidence whatever that defendant saw, or could have seen, these young ladies before they crossed the sidewalk line of Pittston Avenue.

The majority has stressed the testimony of witnesses who stated that a motorist on Pittston Avenue would have a view of Palm Street for distances of seventy-eight to ninety feet to the east from points sixty and thirty feet from the intersection. But not one of the witnesses testified that the *entire surface* of Palm Street would have been visible to such motorist *between the intersection and the farthest points described,* or that coasters, crouched upon their sled as were the minor plaintiffs, travelling, after dark, upon the south side of Palm Street, would have been visible above the elevation of thirty-eight inches from the street level to the top of the terrace, this height being further increased by the depth of the snow thereon. It is clearly apparent, therefore, that the plaintiffs have failed to prove that defend-

ant could have seen *this* sled, or that *any* sled was within the alleged range of visibility at the time of his approach.

Even if, as plaintiffs assert, the defendant could have seen children coasting on the hill, he would also have observed that the ashes brought their sleds to a stop forty feet from the intersection, and under these circumstances the presence of children standing upon the corner would have had no significance.

The majority has erroneously inferred, it seems to me, that because defendant's business took him into the vicinity on other occasions and he was familiar with the topography of the district, he should have known that Palm Street would be used for coasting at this hour of the evening. They completely overlook the fact that there is no evidence whatever that defendant had ever seen persons coasting on this hill at any time. It certainly cannot be inferred that he had knowledge of its use for that purpose merely because it afforded "an ideal street, from the standpoint of children, for coasting." Obviously a motorist is not bound to know that there is coasting on every hill or decline which might, or might not, prove attractive to children.

In the absence, therefore, of any proof that defendant knew that these young ladies or others were likely to come into the intersection with their sleds, there is nothing in the manner in which the accident occurred to create any inference of negligence. That he had his car under control, and that he was proceeding at a reasonable speed appears clearly from the undisputed evidence that he came to a stop within six or eight feet from the point of collision. In view of the slippery condition of the street, this physical fact effectively negatives the existence of a lack of due care on his part. See *Justice v. Waymann,* 306 Pa. 88, 91; *Brennen v. Pittsburgh Rys. Co.,* 323 Pa. 81, 85.

The present cases are clearly distinguishable from those cited by the majority. In *Yeager v. Gately & Fitzgerald,* 262 Pa. 466, the defendant admitted that he

saw children coasting on the intersecting street, and there was evidence that he could have seen the injured boy himself at a distance of fifty feet from the crossing, which he approached on the wrong side of the street. In *Morris v. Kauffman,* 120 Pa. Superior Ct. 515, similar facts appeared. In *Idell v. Day,* 273 Pa. 34, the defendant suddenly swerved his car into the path of persons sledding in the opposite direction on the same street, and in *Fisher v. Duquesne Brewing Co.,* 123 Pa. Superior Ct. 208, the operator of the truck made a left turn in front of the minor plaintiff, whom he did not see because of defective headlights though he knew that others were coasting on the hill. *Meyers v. Central R. R. Co. of N. J.,* 218 Pa. 305, involved a collision between a locomotive and a sled, where it appeared that the engine was running in reverse, that proper warning was not given of its approach, and that the crossing was not protected in the customary manner. *Rhoads v. Herbert,* 298 Pa. 522; *Mosely v. Conner,* 318 Pa. 17; and *Rossheim v. Bornot, Inc.,* 310 Pa. 154, merely set forth the recognized duty of motorists at intersections, and did not involve accidents to persons coasting.

Moreover, the facts indicate that these minor plaintiffs in the present cases themselves were clearly guilty of negligence. They resided in the vicinity and were familiar with the dangers of the hill. They were not small children, but young ladies attending high school and thoroughly capable of appreciating these dangers. That they descended the hill at great speed is established conclusively by the fact that theirs was the only sled which passed through the twenty-foot protective belt of ashes, crossed the further intervening twenty or twenty-two feet and entered the intersection. The same fact is illustrative of their lack of control over the sled, or their indifference to its perilous progress. Although it travelled a distance of more than twenty feet after passing through the ashes, it does not appear that these young ladies made any effort whatever to

bring it to a stop, to deflect its course from the intersection, or to abandon it at the approach of danger.

While it is true, as the majority points out, that sledding upon a public street is not in every case negligence per se, it cannot be said that those who engage in this sport may do so at dangerous intersections without observing the ordinary rules of care which are imposed upon all users of the highways, whether travelling in conveyances or on foot. Had another automobile, bicycle, or motorcycle, entered this crossing at the same speed and so obviously out of control as the sled of the minor plaintiffs, there is no doubt that its operator would have been guilty of negligence. Nor would a pedestrian, so reckless of his own safety and so heedless of the approach of a vehicle on the intersecting streets have been permitted to escape the consequences of such lack of care. The majority has suggested no reason why coasters (particularly of the ages of these young ladies) should be relieved from these common requirements of prudence, and be treated as a special class immune from fault.

As I view the testimony, the fault here was not with defendant, but rather with the minor plaintiffs and there should be no recovery permitted. I would, therefore, affirm the orders of the court below, refusing to grant a new trial to plaintiffs.

Mr. Chief Justice SCHAFFER and Mr. Justice LINN join in this dissent.